ATTORNEY GENERAL, *ex rel.* STATE BANKING
COMMISSIONER, *v.* NATIONAL BANK
OF DETROIT.

1. CONSTITUTIONAL LAW—STATE STATUTES—NONACTION BY CONGRESS.
    A federally-created agency is subject to State law and enforcement thereof in State courts when there is no Federal law governing the subject and the State act, undertaking to do so, in nowise conflicts with paramount Federal law or with the purposes for which the federally-created agency was established.

2. SAME—STATE STATUTES—PERMISSION BY CONGRESS.
    A federally-created agency is subject to State law when congress has expressly delegated to the States power to legislate in the field and the States have done so, since then the States are not enforcing Federal, but State, laws and there is impliedly conferred upon State courts the power to enforce it.

3. BANKS AND BANKING—BRANCH BANKS—FEDERAL STATUTES.
    The national bank act, in providing for and governing the establishment of branches by national banks and fixing the standard, by which it must be determined as whether State law permits it to be done by State banks, sets up a standard for the violation of which would be a Federal offense (12 USCA, § 36; CL 1948, § 487.34).

4. SAME—NATIONAL BRANCH BANKS—JURISDICTION OF STATE COURTS.
    The State Supreme Court is without jurisdiction to enforce a Federal law against a federally-created corporation even though the Federal law employs State law as a measuring stick for its application; hence, such court may not prevent a national bank from establishing a branch in a city in which a State bank is already in operation although such action by a State bank is barred by State statute (12 USCA, § 36; CL 1948, § 487.34).

---

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 11 Am Jur, Constitutional Law § 174 *et seq.*
[3, 4] 7 Am Jur, Banks § 24.
[3, 4] Branch banks.  30 ALR 927; 50 ALR 1340; 136 ALR 471.

Frank G. Millard, Attorney General, on the relation of Maurice C. Eveland, Commissioner of the Banking Department, and on the relation of the Bank of Livonia, a Michigan banking corporation, filed an information in the nature of quo warranto to determine under what authority the National Bank of Detroit operates a branch in the City of Livonia. Submitted October 16, 1953. (Docket No. 64, Calendar No. 45,913.) Information and relations dismissed December 29, 1953.

*Frank G. Millard,* Attorney General, and *Edmund E. Shepherd,* Solicitor General, for relator Commissioner.

*Bratton, Bratton & Brooke* and *Marx, Levi, Thill & Wiseman,* for relator Bank of Livonia.

*Dickinson, Wright, Davis, McKean & Cudlip (Robert E. McKean* and *Max L. Veech,* of counsel), for defendant.

DETHMERS, C. J. This is quo warranto brought here to challenge the right of defendant National Bank of Detroit to establish and operate a branch at 27637 Grand River avenue in the city of Livonia. The case is submitted on pleadings and stipulation of facts going to the merits and defendant's motion to dismiss for lack of jurisdiction.

Plaintiffs allege that relator Bank of Livonia, a State bank, was in operation in Livonia when defendant established the branch in question there. They contend that, accordingly, defendant was precluded therefrom by the following statutory provisions:

"The conditions upon which a national banking association may retain or establish and operate a branch or branches are the following:  *  *  *

"(c) A national banking association may, with the approval of the comptroller of the currency, establish and operate new branches: (1) Within the limits of the city, town or village in which said association is situated, if such establishment and operation are at the time expressly authorized to State banks by the law of the State in question; and (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and *subject to the restrictions as to location imposed by the law of the State on State banks.*" 12 USCA, § 36.

"Any bank having a capital of at least $50,000.00 may, with the written approval of the commission, establish and operate a branch or branches within a village or city other than that in which it was originally chartered: Provided, That the village or city in which it is proposed to establish and operate a branch is located in the same county in which the parent bank has its principal office or, if not in said county, then within 25 miles of said parent bank or in a contiguous county at a point more than 25 miles from the parent bank, if such county has no bank: *Provided further, That no such branch shall be established in a city or village in which a state or national bank or branch thereof is then in operation.*" CL 1948, § 487.34 (Stat Ann 1951 Cum Supp § 23.762.)

Touching this Court's jurisdiction, defendant cites *First National Bank in St. Louis* v. *Missouri,* 263 US 640 (44 S Ct 213, 68 L ed 486); *Territory* v. *Lockwood,* 3 Wall (70 US) 236 (18 L ed 47); *Ex Parte Shockley,* 17 F2d 133; and *People, ex rel. Trombley,* v. *Auditor General,* 23 Mich 471 (9 Am Rep 94), for the proposition that State courts have no authority or jurisdiction, by quo warranto or otherwise, to call a Federal corporation or officer to account for acts

alleged to be in excess of powers granted by, or for alleged violations of, Federal law. Conceding the validity of that proposition, plaintiffs urge its inapplicability on the ground that presented here is a question of violation of State rather than Federal law, citing as authority for that contention and for the right of enforcement and vindication of State law by State courts against agencies constitutionally created by Federal law. *Attorney General* v. *First National Bank of Bay City,* 192 Mich 640, reviewed in *First National Bank of Bay City* v. *Attorney General,* 244 US 416 (37 S Ct 734, 61 L ed 1233); *First National Bank in St. Louis* v. *Missouri, supra; Ex parte Worcester County National Bank,* 279 US 347 (49 S Ct 368, 73 L ed 733, 61 ALR 987); and *Anderson National Bank* v. *Luckett,* 321 US 233 (64 S Ct 599, 88 L ed 692, 151 ALR 824).

*First National Bank of Bay City* involved, as stated in the report of that case, "the validity of provisions in the Federal reserve bank act authorizing national banks to act as trustees, et cetera, when allowed by the reserve board and *not in contravention of State law;* also the jurisdiction of the State court to determine the authority of such banks in proceedings akin to quo warranto." *Worcester County National Bank* involved a like situation and statutory provision. It was held in *Worcester* that the act of congress limiting national banks in certain respects to acts "not in contravention of State law" enjoins upon the federally created corporation "complete conformity with the State law" (syllabus) and in *Bay City* that in so doing "Congress impliedly, if not expressly, authorized the institution and conduct in the State Supreme Court of proceedings in the nature of quo warranto to test whether the exercise of such function by a national bank is consistent with State law." (Syllabus.) *First National Bank in St. Louis* was decided at a time (1923) when Federal law

made no provision for establishment of branches by national banks. The supreme court of the United States held that enforcement of the State act, theretofore construed by the State supreme court to prohibit national as well as State banks from establishing branches, constituted a valid exercise of State power and that national banks were subject thereto because it did not (656) "interfere with the purposes of their creation, tend to impair or destroy their efficiency as Federal agencies or conflict with the paramount law of the United States"; and, further, that (660) "since the sanction behind it (the State act) is that of the State and not that of the National Government, the power of enforcement must rest with the former and not with the latter." *Anderson National Bank,* in which jurisdiction of the State court was not questioned, was of the same import as *St. Louis* to the effect that a State could make applicable to national banks a law providing for the administration of abandoned bank deposits so long as that was not in conflict with any Federal law.

To summarize the holdings of the above cases, it appears that when, as in *St. Louis* and in *Anderson,* there is no Federal law governing the subject and the State act undertaking to do so in no wise conflicts with paramount Federal law or with the purposes for which the federally created agency was established, the latter is subject to the State law and enforcement thereof in the State courts; and that when, as in *Bay City* and in *Worcester,* congress has expressly delegated to the States the power to legislate in the field and the States have done so, then, as said in *St. Louis,* the State courts may enforce the applicable law because in so doing they are not enforcing Federal but State law and, as said in *Bay City,* in leaving the matter to be governed by State law congress has impliedly conferred upon State courts the power to enforce it.

Unlike *St. Louis* and *Anderson,* in the instant case there is Federal law governing the subject matter. The national bank act provides for and governs the establishing of branches by national banks. It has left no area to be occupied by a State statute covering that subject. The case at bar is distinguishable from *Bay City* and *Worcester* in which congress delegated to the States the power to legislate on the subject there in question by providing that the federally created corporations might act in certain respects only when "not in contravention of State law." Here congress has not delegated to the States power to enact legislation forbidding or governing the establishment of branches by national banks. Rather the act of congress has fixed and set the standard by which it must be determined whether a national bank may establish a branch, namely, whether State law permits it to be done by State banks. Violation of the standard offends against Federal, not State, law, for how can a national bank be guilty of violating a restriction imposed by State law on State banks. Clearly distinguishable is the situation, as in *Bay City* and *Worcester,* in which the act of congress provides for a course of action by a Federal agency when and if it is not prohibited by State law, for in such case it is the State law, while in the instant case it is the act of congress, which either permits or prohibits the action in question.

Not only does the prohibitory State statute here involved (part of an act providing for the incorporation, operation and regulation of State banks) make no express mention of national banks but, if it were deemed to have been the legislative intent to make its restrictions on branches applicable to national banks, it would in that respect fail for the reason that the act of congress has preempted the field.

May defendant establish and operate the branch? The answer is to be found in Federal law which gov-

erns and employs State law as a measuring stick for its application. The suit being for enforcement of Federal law against a federally-created corporation, this Court is without jurisdiction in the premises.

The information and relations are dismissed, with costs to defendant.

ADAMS, BUTZEL, CARR, BUSHNELL, SHARPE, and REID, JJ., concurred, with DETHMERS, C. J.

BOYLES, J., concurred in the result.