OYAMMA JOHNSON *et al.*, Plaintiffs-Appellants, *v.* THE TOWN OF THE CITY OF EVANSTON *et al.*, Defendants-Appellees.

First District (5th Division)    No. 61997

Opinion filed May 28, 1976.

Allan R. Fierce, of Cook County Legal Assistance Foundation, Inc., of Evanston, for appellants.

Sydney G. Craig, Howard D. Johnson, and Thomas H. Donohoe, all of Chicago (Martin, Craig, Chester & Sonnenschein, of counsel), for appellee Quaife Ward.

Mr. JUSTICE BARRETT delivered the opinion of the court:

This was a complaint in chancery brought by two general assistance recipients, three owners of real property and a not-for-profit community organization against the Town of the City of Evanston and its town supervisor, Quaife Ward, seeking a declaration that the town supervisor has no authority to establish or revise the standards used to compute benefits to general assistance recipients in the Town of the City of Evanston.

Upon countermotions for judgment on the pleadings the trial judge entered a declaratory judgment that the town supervisor "has the lawful authority to establish the standards defining basic maintenance requirements by establishing the maximum monthly grant levels, including the components thereof, used to compute benefits to recipients of General Assistance in the TOWN OF THE CITY OF EVANSTON." From this decision plaintiffs appeal.[1]

Plaintiff's second amended complaint alleged that it is the duty of Evanston Township to render general assistance to eligible residents; that the boundaries of the Town of the City of Evanston and the City of Evanston are coterminus; that defendant is the duly elected town supervisor and as such he is also the ex officio supervisor of general assistance for Evanston Township charged with the duty to receive and pay out monies for general assistance to all eligible persons; that under section 39.02 of the Township Organization Act (Ill. Rev. Stat. 1973, ch. 139, par. 1 et seq.), the electors (adult residents of the town) of Evanston Township have the power to "take all necessary measures and give directions for the exercise of their corporate powers"; that in a township which has coterminus boundaries with a city the corporate powers of the town formerly exercised by the electors are now exercised by the city council; that it is similarly the duty of the city council to exercise the functions of the town board of auditors to raise monies by taxation for providing general assistance and to adopt a combined budget and appropriation ordinance for Evanston Township; that it is the duty of defendant as supervisor to receive and pay out monies raised for general assistance and to provide general assistance to all persons eligible therefore; and that an actual controversy has arisen between plaintiffs and defendants with respect to the power of the town supervisor to unilaterally establish and/or change the maximum grant levels for Evanston Township's general assistance program. Specifically they allege that defendant has unilaterally changed the grant levels at least four times in the past year; that at various times during the past year the city council

---

[1] The Town of the City of Evanston filed a motion in lieu of an answer which emphasizes that there is an actual controversy regarding the construction of State statutes and did not participate further in the proceeding. Hence where defendant is used in this opinion it refers to defendant, Quaife Ward, only.

has "directed" defendant to establish a specific maximum grant level; and that the city council is unable to decide whether it has the power to establish and/or revise the maximum grant level. They contend that sections 6—1, 6—1.2 and 6—2 of the Public Aid Code (Ill. Rev. Stat. 1973, ch. 23, par. 2—1 *et seq.*), as applied to the organizational structure of Evanston Township, give the power and authority to establish and/or change the standards defining basic maintenance needs to the Evanston City Council. To support their contention plaintiffs point out that they have no input into the decisions of the supervisor whereas they could influence the city council's hearings and decisions through their aldermen. Plaintiffs claim that defendant's unilateral changes in the assistance level irreparably harm plaintiff-recipients in obtaining food, clothing and shelter and harm plaintiff-taxpayers by causing their taxes to be illegally administered and disbursed. In conclusion, plaintiffs' second amended complaint states, "A declaratory judgment declaring who has the lawful authority to set the grant levels for the Evanston Township general assistance program will terminate the controversy for all persons and parties involved" and prays the court to declare that the city council possesses this authority.

Defendant's answer to plaintiffs' second amended complaint admits that the Town of the City of Evanston and the City of Evanston have coterminus boundaries; that Evanston Township has the statutory duty to give eligible residents financial aid; and that as the ex officio Supervisor of General Assistance for Evanston Township he is charged with the duty to receive and pay out monies for the general assistance program. Defendant affirmatively states that the Township Organization Act expressly enumerates the powers of the electors, board of town auditors, supervisor, and other town officials; that the electors have the power to take necessary actions for the exercise of their corporate powers as enumerated in sections 39 through 39.34 of the Township Organization Act; and that the powers of the electors, board of town auditors and supervisor are limited to expressly conferred powers and to powers conferred by necessary implication. Defendant further admits that section 130 of the Township Organization Act is applicable to Evanston Township but denies plaintiffs' allegations interpreting section 130. Defendant also affirmatively states that it is the function of the city council, as repository of the power of the board of town auditors, to raise money by taxation and to adopt a combined annual budget and appropriations ordinance. Defendant denies that he has unilaterally changed the grant level at least four times in the past year and that the city council has directed him to establish a specific maximum grant level. In addition, defendant states that he was elected by the registered voters of Evanston Township and as such is the elected representative of plaintiff-

residents. Lastly, defendant admits that a declaration of who has the rightful authority to set the general assistance level will end the controversy.

Defendant's supplemental answer to the second amended complaint states that circumstances beyond control may and do occur subsequent to adoption of the combined annual budget and appropriation ordinance for Evanston Township by the city council which affect the amount of monies available for payment of general assistance to qualified persons at the anticipated grant level. Circumstances including: changes and forecasted changes in the number of persons eligible for and in need of assistance, changes in individual circumstances affecting the maintenance needs of persons already eligible, changes in the general cost of living, and changes in unemployment necessitate the reduction of grant levels, provided always that the minimum State level is met, to conserve general assistance funds until additional monies are provided.

Plaintiffs moved for judgment on the pleadings. Initially defendant opposed this motion but then also moved for judgment on the pleadings. The court granted declaratory relief in defendant's favor. From this determination plaintiffs appeal.

OPINION

.I.

■■ Declaratory judgment procedure is available to interested parties who bring suit to settle disputes as to the powers and duties of public officials. (*Partney v. Dallas* (1969), 111 Ill. App. 2d 261, 250 N.E.2d 166.) An actual controversy must exist between the parties. (*Burgard v. Mascoutah Lumber Co.* (1955), 6 Ill. App. 2d 210, 127 N.E.2d 464.) Plaintiffs sought a declaration of who in Evanston Township has the lawful authority to establish and/or change general assistance grant levels. Plaintiffs claimed that under relevant sections of the Township Organization Act (Ill. Rev. Stat. 1973, ch. 139, par. 1 *et seq.*), and the Public Aid Code (Ill. Rev. Stat. 1973, ch. 23, par. 1—1 *et seq.*), the city council, exercising the powers vested in the electors and board of town auditors, should be declared the proper body to set the basic maintenance level. Because defendant, the supervisor of general assistance, was exercising this power, plaintiff-recipients alleged that irreparable harm was caused as their ability to procure food, clothing and shelter was affected. The plaintiff-taxpayers alleged that their tax monies were being administered and disbursed illegally by defendant. Defendant's answer opposed plaintiff's position by affirmatively stating that under the Township Organization Act and the Public Aid Code he had the lawful authority to establish and/or revise the general assistance grant level. We agree with the trial court that a controversy existed between the parties

and that a declaration of rights binding upon the parties would end this controversy.

■■■ The only question raised by the pleadings was one of statutory construction which was a question for the court. (*Apollo Savings & Loan Association v. Burow* (1963), 39 Ill. App. 2d 273, 188 N.E.2d 900.) By cross motioning for judgment on the pleadings, each of the parties has admitted the facts well-pleaded in the pleadings of the opposite party. (*Cunningham v. MacNeal Memorial Hospital* (1970), 47 Ill. 2d 443, 266 N.E.2d 897.) In other words, the parties have asserted that no issue of material fact is involved. Where the court can determine the relative rights of the parties in the subject matter solely from the pleadings, a motion for judgment on the pleadings is proper procedure. (*Commercial Mortgage & Finance Co. v. Rockford* (1965), 62 Ill. App. 2d 160, 210 N.E.2d 7; *Tompkins v. France* (1959), 21 Ill. App. 2d 227, 157 N.E.2d 799.) The motion tests the sufficiency of the pleadings as a matter of law. (*Cunningham v. MacNeal Memorial Hospital* (1970), 47 Ill. 2d 443, 266 N.E.2d 897; *Milanko v. Jensen* (1949), 404 Ill. 261, 88 N.E.2d 857.) To decide the motion, the court need consider only those material facts and allegations which are well-pleaded disregarding all surplusage and conclusory allegations. (*W. Q. O'Neall Co. v. Coon Run Drainage & Levee District* (1943), 319 Ill. App. 324, 49 N.E.2d 283.) Where the answer to a complaint for declaratory judgment meets and controverts the issues raised by that complaint, no counterclaim is required for the court to declare the rights of all the parties, regardless of which may prevail. (*Burgard v. Mascoutah Lumber Co.* (1955), 6 Ill. App. 2d 210, 127 N.E.2d 464.) It was proper for the trial court to enter a declaratory judgment in this case and the only question before this court is whether the trial court properly construed the pertinent statutes.

## II.

Plaintiffs assign error to the trial court's declaration that the township supervisor as the ex officio supervisor of general assistance has the lawful authority to establish and/or change the basic maintenance level. In Illinois certain forms of aid are rendered and administered by the State (Ill. Rev. Stat. 1973, ch. 23, arts. III, IV, V), but general assistance is rendered and administered by local governmental units. (Ill. Rev. Stat. 1973, ch. 23, arts. VI, XII.) In counties such as Cook which are under township organization, the townships are the units of local government responsible for general assistance programs. (Ill. Rev. Stat. 1973, ch. 23, par. 12—3.) Thus, Evanston Township is a local governmental unit which must render and administer a general assistance program for eligible residents.

To determine the proper amount which the local governmental unit

must render to a recipient, the requirements and income of each applicant is compared to the basic maintenance level in order to provide the individual with a livelihood compatible with health and well-being. (Ill. Rev. Stat. 1973, ch. 23, par. 6—2.) The Public Aid Code, however, does not set a basic maintenance level. To administer the program, the local governmental unit is required to decide what constitutes a basic maintenance level in that community. The issue is who in the local governmental unit has the authority to set and/or revise the basic maintenance level. We agree with the trial court's declaration that the supervisor possesses the duty to set the basic maintenance level.

■■■ The General Assembly expressly placed the administration of the general assistance program upon the supervisor. (Ill. Rev. Stat. 1973, ch. 23, pars. 12—21, 12—21.2, 12—21.8.) Specifically the supervisor is required to "provide public aid to all persons eligible for aid therefore under Article VI of this Code * * *." (Ill. Rev. Stat. 1973, ch. 23, par. 12—21.8.) To administer the program and provide general assistance to those eligible would be impossible without the power to establish and/or revise the basic maintenance level in light of the fluctuation of variables such as unemployment, cost of living, and the number of persons eligible. The role and authority of the township supervisor in caring for the poor of the town has remained steady and relatively unchanged in a statutory history which dates back to 1874. (Poor Relief Act of 1874, Ill. Rev. Stat. 1933, ch. 107, pars. 18, 20; Public Assistance Code of 1949, Ill. Rev. Stat. 1949, ch. 23, pars. 439—9, 439—12; Illinois Public Aid Code of 1967, Ill. Rev. Stat. 1967, ch. 23, pars. 12—21.2, 12—21.8.) Litigation, construing the parameters of the powers vested in the supervisor as ex officio supervisor of general assistance (formerly the ex officio overseer of the poor), has involved the issue of whether the supervisor may bind the town to charges incurred without following the established accounting and auditing procedure. In these cases, however, it has never been questioned that in Illinois the supervisor is the local governmental official with the lawful authority to determine eligibility both in the general sense of setting basic maintenance levels and individually by judging need when comparing the applicant's sources of income to that level. (*People v. Reiter* (1941), 377 Ill. 27, 35 N.E.2d 364; *Town of Kankakee v. McGrew* (1899), 178 Ill. 74, 52 N.E. 893; *Sisters of the Third Order of St. Francis v. Groveland Township* (1972), 7 Ill. App. 3d 278, 287 N.E.2d 302; *St. John's Hospital v. Town of Capitol* (1966), 75 Ill. App.2d 222, 220 N.E.2d 333; *First Trust & Savings Bank v. Town of Ganeer* (1938), 296 Ill. App. 541, 16 N.E.2d 806; *Rock Island County v. Rankin* (1905), 118 Ill. App. 499; *Cochran v. County of Vermilion* (1903), 113 Ill. App. 140.) Under the Poor Relief Act of 1874 (Ill. Rev. Stat. 1933, ch. 107, par. 20), and

the Public Assistance Code of 1949 (Ill. Rev. Stat. 1949, ch. 23, par. 439—12), the supervisor's provision for the poor was subject to rules and regulations of the board of town auditors. While this phrasing was not continued in the Illinois Public Aid Code of 1967 (Ill. Rev. Stat. 1973), section 13—1 states that the 1967 Code was simply a reorganization of the 1949 Code and no increase or decrease in the rights and obligations of the administrative agencies was intended. (Ill. Rev. Stat. 1973, ch. 23, par. 13—1.) This limitation, however, does not go to the supervisor's authority to set the basic maintenance level. The board of town auditors are given accounting, auditing, and taxing but not administrative powers under the Public Aid Code and the Township Organization Act. The board of town auditors have the authority to consent to expenditures of the supervisor beyond the tax monies raised for the purpose of providing general assistance (Ill. Rev. Stat. 1973, ch. 23, par. 12—21.9), to audit the supervisor's accounts as supervisor of general assistance (Ill. Rev. Stat. 1973, ch. 139, par. 120), to raise money by taxation for the general assistance fund (Ill. Rev. Stat. 1973, ch. 139, par. 126.4), to transfer funds from the general fund to the general assistance fund, if not earmarked for other purposes (Ill. Rev. Stat. 1973, ch. 139, par. 126.5), and to contract with other governmental entities or nonprofit corporations and community organizations to provide social services to the poor. (Ill. Rev. Stat. 1973, ch. 139, par. 126.10.) It is within this statutory framework that the board of town auditors may make rules and regulations binding upon the supervisor. The authority to establish the basic maintenance level does not fall within any of the board of auditors' powers but is simply a matter of administration of article VI of the Public Aid Code which is expressly placed upon the supervisor by the legislature. Where the intent of the legislature is expressed clearly in the language of the statute, there is no room for judicial interpretation. (*Department of Public Works and Buildings v. Wishnevsky* (1972), 51 Ill. 2d 550, 283 N.E.2d 872.) Thus, the supervisor has the lawful authority to administer the general assistance program which includes the establishment and/or revision of the basic maintenance level unhampered by the rules and regulations set by the board of town auditors.

Appellants' contention that under the Township Organization Act the special circumstance of Evanston Township and the City of Evanston possessing coterminus boundaries causes the city council to be the body with the authority to set the basic maintenance level is without merit. When a township and city have coterminus boundaries, section 130 of The Township Organization Act applies:

> "All the powers vested in such town, including all the powers now vested by law in the Highway Commissioners of such town

and in the board of town auditors of such town, shall be exercised by the city council." (Ill. Rev. Stat. 1973, ch. 139, par. 130.) However, section 131, enacted concurrently, provides for the continuance of the supervisor as the ex officio supervisor of general assistance. (Ill. Rev. Stat. 1973, ch. 139, par. 131.) It is a settled rule of statutory construction that where there is found in a statute a particular enactment, it is held to be operative as against the general provisions on the same subject either in the same act or in the general laws relating thereto. (*People ex rel. Myers v. Pennsylvania Railroad Co.* (1960), 19 Ill. 2d 122, 166 N.E.2d 86.) As stated above, the power to establish the basic maintenance level is delegated to the supervisor as part of the administrative duties of the general assistance program and this specific grant of power is continued by section 131 regardless of the general grant of power to the city council by section 130.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

DRUCKER and SULLIVAN, JJ., concur.